CHARLES STEPHANES v. THE STATE.

An indictment charging that the defendant kept a disorderly house, "by allowing and permitting great numbers of drunken negroes to congregate and use indecent language, and entertaining them to the great annoyance," &c., without an averment that he so permitted and entertained them at his house, held insufficient.

Appeal from Harris. Tried below before the Hon. P. W. Gray.

Indictment for keeping a disorderly house. As the opinion of the Court is confined to a question arising on the face of the indictment, a statement of the facts of the case further than may be found in the Opinion is deemed unnecessary.

*John Johnson*, for appellant. In the motion for arrest of judgment, the second assignment is, " because the indictment does not charge the offence to have been illegally, or unlawfully, or knowingly to him committed."

In 3 Archibald's Crim. P. & Plead., p. 608, it is said : " An indictment for a public nuisance, in frequenting houses of ill-fame, must expressly charge, that the defendant, knowing the house to be a house of ill-fame, did openly and notoriously haunt the same. (Brooks v. State of Tennessee, 2 Yerg. 482.)

Again he says : " When from the nature of the establishment a house may be an annoyance, and from its situation has become so, an indictment for a nuisance, will be, and these two things must be set out in the indictment." (State v. Purse, 4 McCord's Rep. 472.)

Again the same author has cited the case of State v. Patterson, 7 Iredell, ¶ 70 on page 608–1, of his work already quoted.

and has given the indictment in full. We insist the indictment is insufficient in not alleging that the appellant illegally, unlawfully and knowingly permitted, &c., &c.

The authorities above quoted all sustain that an indictment is insufficient without those allegations, and in the case of the State v. Patterson, 7 Iredell, 70, those words are repeatedly used, and it is only reasonable to contend the necessity of such allegations, for in all criminal cases it is necessary to support the action, and for a conviction to prove that the offence was committed willfully and knowingly by the offender, and it is a well known and settled rule of law, that nothing will be presumed in favor of the indictment, but it must contain all the necessary allegations to support it. It will be perceived by the Court, the indictment in the case at bar does not contain those essential allegations, and is insufficient. Again the same author says on the same page, 608-3: "An indictment for a nuisance, which concludes to the common nuisance, of divers of the commonwealth's citizens, is insufficient. It should be laid to the common nuisance of all the citizens of the commonwealth residing in the neighborhood, or of all the citizens, and residing and passing thereby." (Com. v. Farris, 5 Rand. 691; 7 Bacon Abr., p. 232; 3 Greenleaf on Ev., Sec. 185.) The indictment at the case at bar does not conclude in the form as set out in the above quoted authorities, nor in accordance with any precedents given by the most learned and most used authors.

An indictment must lay the charge against the defendant positively, and not by way of recital; and it must expressly allege every thing material in the description of the substance and manner of the crime; for no intendment shall be admitted to supply a defect of this kind. (5 Bacon's Abr. p. 70; Lewis' Cr. Law U. S., p. 680 and 559; Wharton's Cr. Law, p. 117 and 118; Com. v. Stewart, 1 Sergent & Rawle R. 341; Hunter v. Commonwealth, 2 Id. 298; Brooks v. The State, 2 Yerger, 483.)

Another cardinal doctrine of Criminal Law, founded in natural justice, is, that it is the intendment with which the act is done that constitutes its criminality. (Greenleaf on Evidence, Secs. 10, 11, 12 & 13.)

But an allegation in an indictment, that certain facts charged were to the common nuisance of all the good citizens of the State, will not make it a good indictment for a common nuisance, unless these facts be of such a nature as may justify that conclusion as one of law as well as of fact. (Wharton's Cr. Law, p. 699 ; Com. v. Webb, 6 Randolph, 726 ; State v. Baldwin, 1 Dev. & Bat. 195.)

It must be to the common injury of the public, and not a matter of mere private grievance ; and this must be shown as an existing fact, and not by any evidence of reputation. (2 Greenleaf, Sec. 186 ; Commonwealth v. Stewart, 1 S. & R. 342; Com. v. Hopkins, 2 Dana, 418 ; 1 Russel on Crimes, 318; Rex v. White, 1 Burr, 333 ; Rex v. Findall, 6 Ad. & El. 143.)

*J. W. Henderson*, also for appellant.

*J. Willie*, Attorney General, for the State. The motion in arrest of judgment raises two objections to the form of the indictment : 1st. That it is not alleged that the offence was committed "illegally, or unlawfully, or knowingly." 2d. That it is not alleged that the disorderly conduct permitted upon the premises of the defendant was to "the common nuisance of the inhabitants of the neighborhood and the citizens of the State."

To sustain the first objection, a precedent found in Archibald's Cr. Pr. & Pl., p. 608, is cited, where the words are used. As to this, it is admitted that the words might have been used, but it does not follow that they are necessary, as I shall attempt to show from authority. The citation from 2 Yerger, 482, is the case of a person indicted for frequenting a house of ill-fame, and not against the keeper of the establishment.

The case of the State v. Parke, 4 McCord, 472, decides only, that " where from the nature of the establishment it may become a nuisance, and from its situation it has become so, an indictment must charge these two things—that it must set forth the nature of the establishment and its situation.

The true rule with regard to the use of technical words, is stated in Archibald's Cr. Pr. & Pl. 91: "In an indictment upon statutes where the definition of the offence contained in them includes such adverbs as 'unlawfully,' 'wilfully,' 'maliciously,' &c., the offence must be charged to have been committed 'unlawfully,' 'wilfully,' or 'maliciously.' The word unlawfully is not essentially necessary in indictments at Common Law, although very generally used."

In no precedent which I find is it stated, nor does it seem necessary from any authority to state, that the particular act permitted to be done at a place (and which render such place a nuisance) were knowingly done.

In this indictment it is charged, that the defendant " did keep a disorderly house by allowing and permitting great numbers of drunken negroes," &c. It would seem that the use of these words, "allowing and permitting" such acts, is equivalent to a direct allegation of having knowingly kept a disorderly house.

As to the second objection, the language is, "to the great annoyance of the neighbors and all good citizens and passers by," which comes within the strictest rule. All good citizens can mean nothing less than the citizens of the State.

A satisfactory answer to the objections raised, is that they are cured by verdict. The 69th Section of the Act of 1854 (Laws of the 5th Leg., p. 70,) provides " that judgment in any criminal case, after verdict, shall not be arrested or reversed upon any exception to the indictment or accusation, if the offence be charged with sufficient certainty for judgment to be given thereon according to the very right of the case."

WHEELER, J. The *indictment* does not conform to approved precedent. (Precedents by Wharton, 433 *et seq.;* 3 Arch. Cr. Pl. 607.) It may not have been necessary to characterize the conduct of the accused as unlawful, or wilful, or to aver that it was to the damage and common nuisance, &c. Yet these, or words of like import, are found in the precedents. Nor, perhaps, was it necessary to aver that he caused or procured the negroes to congregate at his house, as the precedents are; (Precedents by Whart. 433, 456 ;) as to permit it was unlawful. The indictment does not conclude according to precedent, nor does it contain words which have been held to be essential. (Whart. Am. Cr. L. 698–9.) Nor does it aver that the negroes congregated at the defendant's house. The averment is, that he kept a disorderly house, " by allowing and permitting great numbers of drunken negroes to congregate and use indecent language, and entertaining them to the great annoyance," &c. Of course the pleader meant to have it understood that the defendant permitted them to congregate at his house, and that he entertained them there. It would have been more in accordance with the rules of pleading, especially in an indictment, to have so averred, than to leave it to inference. We think, on the whole, the indictment is too loosely and carelessly framed to sustain a conviction, where the puishment is fine and imprisonment. To hold it sufficient would be to make a precedent ; and that we are not inclined to do. We think it safer to adhere to established and approved precedents, (though it should occasion the escape of an offender, who, it may be, well deserves punishment, for an offence of very injurious tendency,) than to invent new ones. We are of opinion that the Court erred in overruling the motion in arrest of judgment ; for which the judgment is reversed and the cause remanded.

Reversed and remanded.