## MARY SYLVESTER v. THE STATE.

HOUSE OF ILL FAME—GENERAL REPUTATION. The general reputation of the occupants of a house is admissible to prove its character in a prosecution for keeping a disorderly house.

APPEAL from Criminal District Court of Galveston county. Tried below before the Hon. Samuel Dodge.

Mary Sylvester was indicted for keeping " a disorderly " house, for the purpose of public prostitution, and as a com- " mon resort for prostitutes."

On the trial, witness Drew testified that he knew the defendant, and her residence, in 1874; knew the general character and reputation of defendant to be that of keeping an assignation house—that he had been at the house of defendant, and had met one woman there for a lascivious purpose. Defendant lived in Galveston city, near Schmidt's garden: saw two or three other women going out at the back door at the time.

Jim Brown, James Baker, and four others, testified that they did not know where the house of defendant was situated as to the street, but it is situated in Galveston city and county; knew the general character and reputation of defendant's house to be that of an assignation house; and on cross-examination by defendant, witness stated that their information of general reputation was formed from talking with their associates and acquaintances, and what they heard them say. This testimony was admitted over the objections of the defendant.

Defendant was convicted, and has appealed.

*Mills & Tevis*, for appellant.

*Frank M. Spencer and N. G. Kittrell*, for State.

GOULD, J. The case of Morris *v*. The State (38 Texas, 603), recognizes the admissibility of evidence of the general reputa-

tion of a house for the purpose of establishing its character as a house of prostitution. The admissibility of such evidence is supported by decisions of other courts. (See The State *v.* McDonell, Dudley, S. C., 346; The State *v.* Hurd, 7 Iowa, 412.) Wharton says: " Common reputation of the character of " the defendants, and the house which they kept, and of the " persons visiting them, is admissible." (3 Wharton's Am. Cr. Law, Section 2393.) It is believed to be well settled that the character of the occupants may be established by evidence of their general reputation. (2 Bish. Cr. Pr., Section 93.) Whilst it is true that the admissibility of such evidence as to the house is denied by some authorities (see Com. *v.* Stewart, 1 Serg. & Rawle, 342), we see no sufficient reason for departing from the ruling in Morris *v.* The State.

The case before us does not present the question of the sufficiency of such evidence, alone, to support a conviction. One witness testifies not only that the house was so reputed, but proceeds to state facts which show that he knew the base uses to which it was appropriated. Whatever doubt we might entertain of the sufficiency of evidence of the general reputation of the house, unsupported by other testimony, to justify a conviction, we think the additional facts in evidence in this case were sufficient.

A distinction is made, in the argument of counsel, between an assignation house and a house of prostitution. In the absence of evidence to the contrary, we think the jury were justified in inferring that the use of the house as an assignation house was by common prostitutes.

There was some evidence on behalf of defendant, to the effect that she lived a quiet, peaceable life, and that there was no noise or disturbance at her house. This may have been true, and yet the house have been " disorderly," in the meaning of the law. A house of prostitution is within the Act, however quietly and peaceably it may be kept.

The judgment is affirmed.                    Affirmed.